# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 25-1845

———————————————

Danielle M. Rennenger

*Plaintiff - Appellant*

v.

Aquawood, LLC; Ming Yiu Chan, also known as Samson Chan; Siu Lun Chan, also known as Alan Chan; Dollar Empire, LLC; Brian Dubinsky; Yi Man Liu, also known as Lisa Liu; Manley Toy Direct L.L.C., also known as Worldwide Toy Direct; MGS International, LLC; Richard Toth; Toy Network L.L.C.; Toy Network Hong Kong; Michael Wu; Banzai International Ltd.; Park Lane Solutions, Ltd.; Toy Quest Ltd.

*Defendants - Appellees*

———————————————

No. 25-1847

———————————————

Ammee Roush

*Plaintiff - Appellant*

v.

Aquawood, LLC; Ming Yiu Chan, also known as Samson Chan; Siu Lun Chan, also known as Alan Chan; Dollar Empire, LLC; Brian Dubinsky; Yi Man Liu, also known as Lisa Liu; Manley Toy Direct L.L.C., also known as Worldwide Toy Direct; MGS International, LLC; Richard Toth; Toy Network L.L.C.; Toy

Network Hong Kong; Michael Wu; Banzai International Ltd.; Park Lane Solutions, Ltd.; Toy Quest Ltd.

*Defendants - Appellees*

_____

No. 25-1848

_____

Robin Lynn Drake

*Plaintiff - Appellant*

v.

Aquawood, LLC; Ming Yiu Chan, also known as Samson Chan; Siu Lun Chan, also known as Siu Lun Chan; Dollar Empire, LLC; Brian Dubinsky; Yi Man Liu, also known as Lisa Liu; Manley Toy Direct L.L.C., also known as Worldwide Toy Direct; MGS International, LLC; Richard Toth; Toy Network L.L.C.; Toy Network Hong Kong; Michael Wu; Banzai International Ltd.; Park Lane Solutions, Ltd.; Toy Quest Ltd.

*Defendants - Appellees*

_____

No. 25-1850

_____

Heather Miller

*Plaintiff - Appellant*

v.

Aquawood, LLC; Ming Yiu Chan, also known as Samson Chan; Siu Lun Chan, also known as Alan Chan; Dollar Empire, LLC; Brian Dubinsky; Yi Man Liu, also known as Lisa Liu; Manley Toy Direct L.L.C., also known as Worldwide Toy Direct; MGS International, LLC; Richard Toth; Toy Network L.L.C.; Toy

Network Hong Kong; Michael Wu; Banzai International Ltd.; Park Lane Solutions, Ltd.; Toy Quest Ltd.

*Defendants - Appellees*

_____

No. 25-1853

_____

Tammie Ackelson

*Plaintiff - Appellant*

v.

Aquawood, LLC; Ming Yiu Chan, also known as Samson Chan; Siu Lun Chan, also known as Alan Chan; Dollar Empire, LLC; Brian Dubinsky; Yi Man Liu, also known as Lisa Liu; Manley Toy Direct L.L.C., also known as Worldwide Toy Direct; MGS International, LLC; Richard Toth; Toy Network L.L.C.; Toy Network Hong Kong; Michael Wu; Banzai International Ltd.; Park Lane Solutions, Ltd.; Toy Quest Ltd.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: April 14, 2026
Filed: July 30, 2026
_____

Before KELLY, ARNOLD, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Danielle Rennenger, Ammee Roush, Robin Drake, Heather Miller, and Tammie Ackelson filed workplace sexual harassment lawsuits in state and federal court, obtaining judgments totaling more than $1.8 million. When the judgments went unpaid, the employees sued under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, alleging that the defendants engaged in a scheme to evade collection of the outstanding judgments. The district court[1] granted summary judgment in favor of the defendants. Reviewing *de novo*, we affirm. *Schreier v. Drealan Kvilhaug Hoefker & Co. P.A.*, 992 F.3d 674, 677 (8th Cir. 2021) (standard of review).

## I. Background

The five operative complaints involve the same fifteen defendants, including three judgment debtors—Aquawood, LLC, Manley Toy Direct, LLC, and Toy Network, LLC; nearly identical factual allegations; and the same three counts: a substantive RICO claim, 18 U.S.C. § 1962(c), a conspiracy RICO claim, 18 U.S.C. § 1962(d), and a request for declaratory relief establishing alter ego liability for all defendants.

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). To establish a substantive RICO claim, the employees must show that the defendants conducted the affairs of an enterprise through "a pattern of racketeering activity"—that is, by committing at least two predicate acts listed in 18 U.S.C. § 1961(1). *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 6 (2010) (citing 18 U.S.C. §§ 1961(1) and 1962(c)); *see also Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (distilling four elements: "(1) conduct (2) of an enterprise

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

(3) through a pattern (4) of racketeering activity"); *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) ("A pattern is shown through two or more related acts of racketeering activity . . . ."). For a conspiracy claim, the employees must establish a substantive RICO violation and "that the defendant[s] entered into an agreement to breach the statute." *Handeen*, 112 F.3d at 1354; *see UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1057 (8th Cir. 2024).

Here, the employees alleged predicate offenses of wire fraud, 18 U.S.C. § 1343; bankruptcy crimes, 18 U.S.C. § 152; money laundering, 18 U.S.C. §§ 1956 and 1957; and obstruction of justice, 18 U.S.C. § 1512(c). *See* 18 U.S.C. § 1961(1) (enumerating RICO predicates). Ruling on the motion to dismiss, the district court held that the employees failed to state RICO claims based on bankruptcy crimes, money laundering, or obstruction of justice. It also held the employees failed to allege facts sufficient to plausibly establish any alter ego relationship between the defendants and dismissed that count. But it allowed the employees to continue with their substantive and conspiracy RICO claims to the extent they were predicated on wire fraud "in furtherance of a sham consignment scheme" involving allegedly fraudulent customs forms.

Following discovery, the defendants moved for summary judgment. The employees presented evidence in support of their wire fraud theory, which showed that one or more of three Hong Kong corporations—Toy Quest Ltd., Park Lane Solutions Ltd., and Banzi International Ltd.—and their alleged principals—Samson Chan, Alan Chan, and Lisa Liu—(collectively, the Hong Kong Defendants) falsely listed a non-defendant, California company, Dollar Empire, LLC, on a U.S. customs form as the importer of record or consignee of products that were actually sent to MGS International, LLC in Iowa. From there, MGS International worked with the Hong Kong Defendants to sell the goods to customers across the United States. The employees argued that if they had known these products were in Iowa, they would have been able to seize them and at least partially satisfy their judgments.

The employees also argued there was evidence of wire fraud beyond the consignment scheme, including evidence that Aquawood prevented them from collecting their judgments by "parking" its assets in another, non-party entity. They further argued that the evidence showed they were injured by the other predicate acts alleged in their complaint: money laundering—based on the customs scheme and asset parking; bankruptcy crimes—based on defendants' purported manipulation of a non-party, non-judgment debtor's bankruptcy proceedings; and obstruction of justice—based on the same bankruptcy proceedings and defendants' discovery conduct in another lawsuit. Finally, they argued that a reasonable factfinder would be able to draw adverse inferences based on defendants' discovery misconduct in this case and others.

The district court granted summary judgment in favor of the defendants on all claims. It did not address the employees' arguments based on other predicate offenses because it had rejected them at the motion to dismiss stage. It held the employees failed to show the customs scheme was the proximate cause of their injury. And while it acknowledged the employees had "well-founded grievances concerning Defendants' apparent lack of forthrightness in this matter," it also held that they were not entitled to adverse inference sanctions. The employees appeal.

II. Causation

To demonstrate an injury "by reason of" a predicate offense, 18 U.S.C. § 1964(c), the employees must show that a predicate offense was both "a 'but for' cause of [their] injury" and "the proximate cause as well." *Hemi*, 559 U.S. at 9 (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). In other words, that the harm they complain of would not have occurred in the absence of the defendant's conduct, and that the conduct "led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). A causal link that is "too remote," "attenuated," or "purely contingent" will not suffice. *Hemi*, 559 U.S. at 9–10 (citations omitted); *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) ("[W]henever the plaintiff's theory of causation requires moving 'well beyond the

first step,' it 'cannot meet RICO's direct relationship requirement.'" (citation omitted)).

The district court held that any injury resulting from the consignment scheme was too indirect for the proximate cause standard. Because there was no evidence that the products ever belonged to Aquawood—the only judgment debtor still in operation—any attempt to have them seized, impounded, or levied upon would "necessarily involve[] many steps," including litigation against non-judgment debtors establishing alter ego liability. Without any "evidence detailing the judgment-debtor defendant's ownership or involvement," it concluded, success in those proceedings was too speculative for proximate cause.

The employees argue that the district court's "unduly rigid" conception of proximate cause conflicts with the Supreme Court's opinion in *Yegiazaryan v. Smagin*, 599 U.S. 533 (2023). We are not convinced.[2] But this case presents a more basic, but-for causation problem. The employees argue that if it weren't for the consignment scheme they could have seized the products and at least partially satisfied their judgments. The products could not have been seized, however, unless they belonged to a judgment debtor or some other defendant answerable for the judgment. *See Lee v. Lee*, 223 N.W. 888, 890 (Iowa 1929) ("[G]enerally speaking, a judgment creditor can only obtain through execution such right or interest in the

_____

[2]*Yegiazaryan* mentions proximate cause once, in a footnote, reciting the same black letter law the district court applied in this case. *Id.* at 544 n.3. *Yegiazaryan*'s holding—that whether a RICO plaintiff has alleged a domestic injury depends on the circumstances surrounding the alleged injury, not the plaintiff's residence—has no application here. *Id.* at 543–45. In their reply brief, the employees argue that the district court's analysis is also inconsistent with *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). They contend that because their injury was the "foreseeable and natural consequence" of the defendants' judgment evasion scheme it was the "direct result" of it too. *Id.* at 658. But since *Bridge*, the Supreme Court has held that a foreseeable injury is not the same thing as direct injury, and only a direct injury will suffice for proximate cause. *See Horn*, 604 U.S. at 612 ("The key word is 'direct'; foreseeability does not cut it.").

property levied upon as was held by the debtor."); 35B C.J.S. *Federal Civil Procedure* § 1284 (2026) ("The property of a person other than the judgment debtor [] is not subject to execution."). The employees have not argued that the products belonged to any of the judgment debtors: Aquawood, Manley Toy Direct, or Toy Network. And while they have claimed they "could have tried to seize them" from whoever did own them—seemingly, Banzai International—based on "successor liability, fraudulent transfer, or alter ego theories," they have not explained what jurisdictions' laws apply, what is required to establish any of those theories, or how record evidence satisfies their requirements. Because the employees have not shown that they could have reached the products to satisfy their judgments under any viable legal theory, they have not shown that the consignment scheme was a but-for cause of their injury.

### III. Other Predicate Acts

At the motion to dismiss stage, the district court held that the employees failed to state any claims based on the other alleged predicate offenses: money laundering, bankruptcy crimes, and obstruction of justice. Undeterred, the employees opposed summary judgment arguing that they were also proximately injured by those other predicate offenses. On appeal, they argue that the district court erred by "ignoring" those arguments when it granted summary judgment. The defendants argue that the district court didn't need to address them; it had already "dismissed" the other predicate acts and could rule on the only RICO "theory" remaining.

We don't know that it could do that. The employees brought one substantive and one conspiracy RICO count, alleging one enterprise engaged in one pattern of racketeering activity. *See United States v. Henley*, 766 F.3d 893, 907 (8th Cir. 2014) ("[RICO predicates] are related if they are shown to 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989))). And a "motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims." *Signal*

*Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) (citation omitted); *see Kruger v. Lely N. Am., Inc.*, 518 F. Supp. 3d 1281, 1292 (D. Minn. 2021); 5B *Wright & Miller's Federal Practice & Procedure* § 1358 (4th ed. 2026).

Still, the district court did not ultimately err in granting summary judgment. *See Schmit v. Trimac Transp., Inc.*, 172 F.4th 612, 618 (8th Cir. 2026) ("We may affirm based on any grounds supported by the record."). The employees failed to clearly identify evidence of these additional predicate offenses. *See McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019) ("[At summary judgment] the nonmovant 'has an affirmative burden to designate specific facts creating a triable controversy.'" (quoting *Crossley v. Ga.-Pac. Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004) (per curiam))). The employees' briefing below contained only one record citation in support of their bankruptcy and obstruction of justice theories—a waybill whose significance was left unexplained. Their money laundering theory was derivative of their unsubstantiated wire fraud and bankruptcy theories. *See* 18 U.S.C. § 1956(a)(1) (prohibiting certain financial transactions involving the proceeds of "specified unlawful activity") and (c)(7)(A) (specified unlawful activity includes wire fraud and bankruptcy offenses listed in § 1961(1)). On appeal, they have submitted twenty-four volumes of appendices for our review, but they haven't cited any evidence supporting these alternative theories. *See* Fed. R. App. P. 28(a)(8); *see also Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments."). Ultimately, we are left agreeing with the district court: "the record is large, but lacking."

The employees also argue that the district court ignored "all acts of wire fraud other than the false customs forms," including Aquawood's "asset parking." But none of these other acts of wire fraud were pleaded with sufficient particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995) ("The particularity

-9-

requirements of Rule 9(b) apply to allegations of . . . wire fraud, 18 U.S.C. § 1343, when used as predicate acts for a RICO claim.").  The employees' brief opposing summary judgment was not an opportunity to remedy that defect in their complaint. *See InfoDeli, LLC v. W. Robidoux, Inc.*, 136 F.4th 792, 801 n.6 (8th Cir. 2025); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (rejecting plaintiff's attempts to "expand his claims in his brief" by asserting facts not raised in the complaint).

The employees protest that they were "not limited to the exact theories set forth in their complaints" under Eighth Circuit precedent.  *See Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979) ("The 'theory of the pleadings' doctrine, under which a plaintiff must succeed on those theories that are pleaded or not at all, has been effectively abolished under the federal rules.").[3]  But they misunderstand that precedent.  *Oglala Sioux* stands for the proposition that a party may sometimes "obtain relief on a theory of recovery not expressly pleaded in the complaint but proved at trial, when it is based on the same wrongful act *that was pleaded*, and when the opposing party has had fair notice."  *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (emphasis added).  The district court "did not abuse its discretion when it declined to consider [the employees'] unpleaded grounds for [wire fraud] on the eve of summary judgment," *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 993 (8th Cir. 2018), and it properly entered summary judgment, *Thayer v. Planned Parenthood of the Heartland, Inc.*, 11 F.4th 934, 939 (8th Cir. 2021) ("A district court may enter summary judgment dismissing a complaint alleging fraud if the complaint fails to satisfy the requirements of Rule 9(b)." (quoting *Murr Plumbing*, 48 F.3d at 1070)).

---

[3]A legal theory is a "vehicle for pursuing the claim," which "dictates what the plaintiff needs to prove to prevail on a claim and what relief may be available." *Signal Funding*, 136 F.4th at 724 (citation omitted); *see also Legal Theory*, *Black's Law Dictionary* (12th ed. 2024) ("The principle under which a litigant proceeds, or on which a litigant bases its claims or defenses in a case.").

In a last-ditch effort, the employees hint at amending their complaints, if "deemed necessary," under Federal Rule of Civil Procedure 15(a) or 15(b)(1). But they did not file a motion to amend in district court. We will not reverse based on the court's "failure to amend [the employees'] complaint *sua sponte*." *Brand v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 934 F.3d 799, 804 (8th Cir. 2019).

## IV. Adverse Inferences

The employees argued below that the defendants engaged in extensive discovery misconduct warranting adverse inferences. The district court acknowledged that the employees had "well-founded grievances," but held that the employees were not entitled to adverse inference instructions as a sanction. *See Marlow v. City of Clarendon*, 78 F.4th 410, 416 (8th Cir. 2023) ("Imposition of discovery sanctions requires an order compelling discovery first, a willful violation of that order, and prejudice to the other party." (cleaned up)).

The employees argue that the court "confus[ed] the availability of adverse inferences as a sanction for discovery violations with the ability of a factfinder to draw adverse inferences." *Compare Zarn v. Minn. Dep't of Hum. Servs.*, 165 F.4th 1143, 1154 (8th Cir. 2026) ("[A]dverse inference instructions are typically given [by the court] as a sanction when a party intentionally destroys evidence to suppress the truth."), *with Langford v. Norris*, 614 F.3d 445, 462 (8th Cir. 2010) ("'Simply stated,' the adverse inference rule 'provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.'" (citation omitted)). In their view, a reasonable jury could draw adverse inferences against defendants based on deliberate withholding and destruction of evidence. They contend that the district court's failure to draw these inferences at summary judgment to "fill any gaps" in their evidence of causation, amounted to a failure to draw all reasonable inferences in their favor.

Generally, the adverse inference rule allows a judicial factfinder to "draw an adverse inference when a party fails to produce highly probative evidence that it could readily obtain if in fact such evidence exists." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 36 (2024).[4] We have suggested the rule also permits a district court to infer that withheld evidence would undermine a moving party's argument at summary judgment. *See Langford*, 614 F.3d at 461–62. Assuming it can, the district court did not err by not doing so here. None of the adverse inferences the employees asked it to draw[5] would have filled the "gaps" in their causation evidence. *Cf. Vogt as Tr. for Heirs of Vogt v. MEnD Corr. Care Inc.*, 113 F.4th 793, 798 n.2 (8th Cir. 2024) ("[A]n adverse inference instruction can defeat summary judgment when coupled with sufficient record evidence. To do so, however, it must create a genuine dispute of material fact on at least some of plaintiff's claims." (cleaned up)).

## V. RICO Conspiracy

Because the employees did not present enough evidence to establish their substantive RICO claim, their conspiracy RICO claim fails too. *See UMB Bank*, 89 F.4th at 1057 (to succeed on a RICO conspiracy claim, a party must first prove the elements of a substantive RICO violation).

---

[4]Emphasis on "factfinder." Where this rule is usually applied, there is no possibility of adverse inference instructions because there is no jury to instruct. *See e.g.*, *id.* at 15 (direct appeal from three-judge panel in redistricting case); *Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir. 1990) (appeal from bankruptcy court); *see also Int'l Union, UAW v. NLRB.*, 459 F.2d 1329, 1339 (D.C. Cir. 1972) (review of agency decision).

[5]For example, that "[t]he failure of Banzai International, Park Lane, and other Defendants to produce their communications with Customs brokers and shippers indicates that the communications would show Defendants were the source of the false and misleading information submitted to Customs and subsequently made available to the public."

## VI. Conclusion

We affirm the judgment of the district court. The employees' motions to supplement the record, and the defendants' motion for leave to file notice of supplemental post-briefing development and request for judicial notice, are denied as moot.

_____